CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
6/11/2025
LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

GREGORY BEASLEY,

        Plaintiff,

v.

RECTOR AND VISITORS OF
THE UNIVERSITY OF VIRGINIA,
in their official and personal capacities;
PAUL ZMICK, Director, Energy and
Utilities, U. Va. Facilities Management;
PETER KOWALSKI, Associate Director
for Heating Plants, U. Va. Facilities
Management; COREY WINFREY,
Manager of Operations, U. Va. Central
Heating Plant, all in their official and
personal capacities,

        Defendants.

No. 3:25-cv-48

**COMPLAINT FOR DECLARATORY, INJUNCTIVE
AND MONETARY RELIEF**

**Introduction**

1.     This disability rights action under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 501, seeks redress for the mistreatment of plaintiff Gregory Beasley, a boiler operator at U. Va. Central Heating, who endured almost two years of crippling pain in a strenuous on-his-feet job while his employer ignored his repeated requests for seated work, then granted such work as an accommodation

under threat of litigation, only to assign him to the most undesirable of working hours as retaliation for speaking out.

## Parties

2. Plaintiff Gregory Beasley, age 57 as of this filing, is a 90% disabled veteran of the U.S. Army who began working in 2007 as an operator of coal boilers at the University of Virginia Central Heating Plant, and has worked there ever since. His responsibilities include shoveling coal, cleaning ash, and maintaining boiler heat production, all done either standing or walking on concrete floors or climbing on narrow steel stairs. Mr. Beasley's medical conditions and physical impairments are described below.

3. Defendants Rector and Visitors of the University of Virginia are the persons, equivalent to a board of directors and its chair, charged with governing the University in compliance with local, state and federal law, and are the persons ultimately held accountable for failures of that compliance. The U. Va. Board of Visitors is composed of seventeen voting members appointed by the Governor of the Commonwealth of Virginia, subject to confirmation by the General Assembly, for terms of four years.

4. Defendant Paul Zmick is director of energy and utilities for the U. Va. Department of Facilities Management.

5. Defendant Peter Kowalski is associate director for hearing plants, reporting directly to Mr. Zmick.

6. Defendant Corey Winfrey is manager of operations for U. Va. Central Heating, and reports directly to Mr. Kowalski.

7. Mr. Zmick, Mr. Kowalski and Mr. Winfrey are Mr. Beasley's first0, second-, and third-line supervisors.

8. All defendants are sued in their personal as well as official capacities. Although the individual named defendants are not liable under the ADA for monetary relief, they are named here in order that they be brought within the scope of any and all injunctive relief granted in this case.

## Jurisdiction

9. This Court has subject matter jurisdiction of this suit under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (federal jurisdiction over civil rights actions), as well as provisions of the Americans with Disabilities Act of 1990 waiving state sovereign immunity for monetary damages and providing federal jurisdiction over such claims.

10. The Court has *in personam* jurisdiction of all parties, as all reside within the Western District of Virginia and its Charlottesville Division.

## Factual allegations

11. Mr. Beasley began services as a full-time boiler operator at U. Va. Central Heating in 2007. He has worked in that capacity continuously since that time.

12.   Mr. Beasley's job performance has been satisfactory or higher continuously from 2007 to the present. He has never been disciplined as a U. Va. employee.

13.   Mr. Beasley's medical conditions include left knee interior pain and patellar instability (wandering kneecap), right knee arthritis and meniscus tears, tenosynovitis (inflammation of the tendon sheaths) and inflammation of the tendons themselves, Morton's neuroma in both feet (causing intense pain in the ball of each foot), and a navel hernia.

14.   These physical impairments are either the result of, or are exacerbated by, the overuse that his continuous standing and moving as a boiler operator entails.

15.   In September 2023, Mr. Beasley learned of an impending change from 8-hour to 12-hour shifts as of January 2024 for heat plant operations employees, including himself.

16.   In anticipation of this lengthening of shifts, and knowing the change would worsen his impairments and erode what quality of life he had left, Mr. Beasley filed a formal request for accommodation with U. Va. HR, on or about September 20, 2023, to relieve him of the new requirement for four extra hours of standing work per shift. He supported that request with a letter from his treating physician, Dr. Joyce.

17. Mr. Kowalski officially announced the change to 12-hour shifts via e-mail in December 2023. Under the policy change as announced, heat plant operations employees had no choice but to accept 12-hour shifts or resign.

18. Meanwhile, Mr. Beasley received no word from anyone at U. Va. about his accommodation request until March 20, 2024, when the change to 12-hour shifts had been in effect almost three full months.

19. On that date, Mr. Beasley was called to a meeting with defendants Zmick, Kowalski, and Winfrey in Mr. Kowalski's office.

20. At that meeting, Mr. Beasley was handed a written letter rejecting his accommodation request as stated, and demanding more information about his impairments and need for accommodation. None of the managers present said anything of substance at the meeting beyond the content of that letter.

21. A few days after that meeting, defendant Winfrey called Mr. Beasley into his office and said that he had been told—he did not say by whom—to talk with Mr. Beasley about ways to accommodate him. Mr. Winfrey suggested at this meeting that Mr. Beasley could train with the heating plant control room supervisor, Marcus Mallory, in order to qualify for and obtain at least some seated work during his boiler operator shifts. However, no such training opportunity was evere presented, and no such thing ever happened.

22. After Mr. Beasley's counsel contacted University Counsel as described herein, Mr. Beasley learned from Mr. Mallory, with whom Mr. Beasley would have trained if Mr. Winfrey's suggestion above had been implemented, that no one had

ever informed Mr. Mallory of that possibility, or of Mr. Beasley's formal request for accommodation or his EEOC complaint.

23. As a direct result of the lengthening of Mr. Beasley's work shifts to 12 continuous hours each, and the lack of any mitigation of the burdens of his standing work, his leg, knee and foot pain from the conditions alleged herein sharply worsened.

24. Mr. Beasley is now unable to stand or walk, even slowly and carefully, with less than severe pain. To ascend the narrow stairs in the boiler room requires him to pull himself up, step by painful step, with both hands. The concrete floors of his workplace, which to an unimpaired individual might cause mild discomfort, to Mr. Beasley are so painful that by the end of a shift he can hardly move, let alone enjoy a normal quality of life.

25. Mr. Beasley has hunted deer and game since age 10, and in the most recent hunting season for the first time could not do so successfully because his mobility was so impaired. For the same reason he could not even serve as a pallbearer at his grandmother's funeral. Sometimes Mr. Beasley's wife has to put on his shoes for him because he is in too much pain to do it himself.

26. In addition to the physical impairments identified above, Mr. Beasley has stress levels he describes as "through the roof." He has been diagnosed with anxiety and insomnia, and is now taking prescription medications for both. He has nightmares once or twice a week, and severe headaches several times a week. His pain prevents him from falling asleep, and his slightest movement when

unconscious causes enough pain to wake him even if he is exhausted. His spouse has even resorted to sleeping in another room to avoid waking him when he must work the next day.

27.　　Mr. Beasley is not the same person he was as recently as 2023. He no longer enjoys eating, but still has gained weight because he is in too much pain to exercise. He can no longer cut his own grass as he once did, and his spouse must shoulder household duties he used to perform. He is in too much pain to socialize; his friends regularly ask him why he cannot why he cannot share activities with them. He is in too much pain to enjoy the simple things in life that he formerly took for granted. He feels as though he has aged five years or more in the past 17 months.

28.　　Mr. Beasley has experienced feelings of depression, loss of self-esteem, worry about keeping his job and remaining able to perform it, and worry about his ability to endure any more pain. and provide for his family. His spouse has repeatedly begged him to quit because of the physical and emotional pain and suffering she sees him go through every day. At work, he feels humiliation and embarrassment every time he must hobble or climb stairs by pulling himself awkwardly upward hand over hand.

29.　　Yet he has faithfully come to work and has performed the essential functions of his job, despite the constant pain and against his physician's advice—relayed in writing to his employer—to obtain more seated work so he can spend less time on his feet.

30. In short, his situation is physically untenable for him, and has long been unjustifiable for his employer to ignore.

31. On July 2, 2024, having received no accommodations whatever since his formal request the previous September, Mr. Beasley filed a formal administrative complaint with the U.S. Equal Employment Opportunity Commission making substantially the allegations set forth above.

32. On March 13, 2025, the EEOC issued Mr. Beasley a notice of his right to sue.

33. On May 10, 2025, Mr. Beasley's newly retained counsel sent a letter to U. Va. University Counsel outlining the allegations set forth in this complaint.

34. On May 17, 2025, U. Va. University Counsel offered Mr. Beasley, through his newly retained counsel, an immediate reassignment to U. Va. Central Heat systems control, although without explanation for why the defendants had offered no such accommodation for the year and five months since Mr. Beasley's formal request for accommodation.

35. On or about June 4, 2025, Mr. Beasley received a formal "offer," signed by defendant Zmick and transmitted by defendant Winfrey, of transfer to seated work at the U. Va. physical plant unit known as Systems Control, but the shift to which the "offer" assigned him was the overnight shift, from 11 p.m. to 7 a.m., a shift generally known to be the least desirable.

36. On information and belief, that shift at Systems Control is already fully staffed, whereas day and evening shifts at Systems Control, 7 a.m. to 3:30 p.m.

and 3 p.m. to 11:30 p.m. respectively, are short-staffed, and have need of, and openings for, additional workers.

37. The defendants who made Mr. Beasley's work assignments, including the one specified in the transfer "offer" cited above, knew or had reason to know (a) that as a boiler operator he worked evening shifts, from 3 p.m. to 11 p.m., until Central Heating switched to 12-hour shifts in January 2024, and (b) that he worked day shifts, from 7 a.m. to 7 p.m., from that time to the time of this filing.

38. Mr. Beasley suffers from anxiety and insomnia either caused or exacerbated by the pain he has been forced to endure as a boiler operator in the absence of the seated-work accommodation described above. His treating physician has instructed that he not work overnight shifts. Therefore the accommodation of transfer to Systems Control, for overnight work only, is not the effective accommodation to which the ADA entitles him.

39. Regardless of whether the defendants who assigned Mr. Beasley to the overnight Systems Control shift knew of the facts alleged in the preceding paragraph, they knew of his protected EEO activity.

40. The assignment of Mr. Beasley to the overnight shift was retaliation by the defendants, and each of them, for his filing of the EEOC charge mentioned in ¶ 31 above, for his seeking the transfer to seat work as an accommodation, and for his having obtained the intervention of University Counsel to secure his transfer in May 2025 when the defendants had obstructed it until then.

41. The retaliation alleged in the preceding paragraph violated the anti-retaliation provisions of Title I of the ADA, 42 U.S.C. § 12203(a) and (b).

42. Just after 5:30 p.m. on the afternoon of this filing, June 11, 2025, University Counsel e-mailed Mr. Beasley's counsel with an offer of a different alternative job for Mr. Beasley, described as "trades utility worker," on the asserted ground that no Systems Control positions were available on the non-overnight shifts, and indeed that Facilities Management had to create a position for him to assign him to Systems Control at all.

43. There was no explanation of the proportion of seated to standing work in the proposed alternative position, and no explanation of why, if a position had to be created for Mr. Beasley in Systems Control, it could not have been created for him on a less undesirable shift. Although Mr. Beasley, by counsel, made these queries of University Counsel within minutes, no response was received.

44. While this Complaint does not allege bad faith on the part of University Counsel, the facts set forth in this paragraph do not negate the claim alleged herein that the defendants retaliated against Mr. Beasley by assigning him to the undesirable Systems Control overnight shift.

45.
46.

## Count I:
### Disability discrimination under the ADA (all defendants)

47. All preceding allegations of this Complaint are incorporated herein in their entirety by reference.

48.     Mr. Beasley is a qualified individual with a disability within the meaning of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.*, and its implementing regulations, see 29 C.F.R. § 1630.2(g)(1)(i) ("[d]isability means . . . [a] physical . . . impairment that substantially limits one or more of [an individual's] major life activities"), § 1630.2(i)(1)(i) ("[m]ajor life activities include . . . walking [and] standing"), § 1630.2(j)(1)(ii) (comparison is to "most people in the general population"); *id.* ("[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting").

49.     Mr. Beasley has continued to work at his U. Va. Central Heating job in spite of these limitations.

50.     The fact that Mr. Beasley has endured and continues to endure the harsh physical pain of his daily work as a boiler operator, and that he has continued to work through that pain, does not preclude a finding that he had, and continues to have, qualifying impairments under the ADA, and merits accommodation under that statute including reassignment to seated work as provided under 42 U.S.C. § 12111(9).

51.     Mr. Beasley is incapable of performing the essential functions of the boiler operator's job without extreme pain, and therefore is entitled under the ADA, 42 U.S.C. § 12111(9), to reasonable accommodation including reassignment to seated work to relieve the pain his boiler operator work inflicts on him.

52. By failing to recognize Mr. Beasley's impairments, and/or by ignoring them or pretending they did not exist, or by slighting them in the course of his U. Va. employment, the defendants and each of them, jointly and severally, have discriminated against him on account of his disability within the meaning of the ADA.

53. As a result of this discrimination, Mr. Beasley has suffered a severe exacerbation of his impairments and a drastic erosion of his quality of life on and off the job as alleged herein.

## Count II:
## Failure to accommodate under the ADA (all defendants)

54. All preceding allegations of this Complaint are incorporated herein in their entirety by reference.

55. Mr. Beasley was incapable of performing the essential functions of the boiler operator's job without extreme pain even before he requested an accommodation that would spare him the increase in continuous duty time from 8 to 12 hours per shift.

56. Under the ADA, as construed in, *e.g., Wirtes v. City of Newport News*, 996 F.2d 234, 241 (4th Cir. 2021) (reassignment is a reasonable accommodation, albeit one of last resort; reassignment to an undesirable position rather than one the plaintiff could perform is disfavored), Mr. Beasley was entitled to an accommodation in the form of seated work within Facilities Management, on terms and conditions that were otherwise as close as possible to his boiler operator

position, from at least the time of his formal accommodation request in September 2023 onward.

57. The defendants failed to respond to Mr. Beasley's request, described above, for seated work, and provided him no job accommodation that would lessen his pain associated with standing, walking, or ascending or descending stairs, or keep his underlying medical conditions and impairments described above from worsening.

58. The defendants failed to offer Mr. Beasley any form of accommodation from September 2023 until Mr. Beasley's counsel contacted University Counsel in May 2025.

59. No meaningful explanation was given for the University's failure to afford Mr. Beasley such accommodation during that period.

60. The failure to offer Mr. Beasley any mitigation of his disability-related workplace burdens as alleged herein constituted a failure to accommodate his qualifying disability as described in this Complaint.

61. The failure to accommodate Mr. Beasley in May 2025 with an accommodation that would be workable, given his inability to work overnight shifts as described above, made a change to overnight shift work, even seated, an ineffective accommodation under the ADA.

62. The failure to assign Mr. Beasley to an alternative position free of undesirable elements, when such alternatives were available and he was qualified for them, was itself a failure to accommodate in violation of the ADA.

63. As a direct result of the University's failure to accommodate Mr. Beasley's qualifying impairments as alleged herein, he suffered a severe exacerbation of those impairments, an increase in the severity of his intense leg, knee and foot pain, and a drastic erosion of his quality of life on and off the job as alleged in this Complaint.

## Count III:
## Retaliation under the ADA (all defendants)

64. All preceding allegations of this Complaint are incorporated herein in their entirety by reference.

65. U. Va. personnel were fully aware of Mr. Beasley's physical impairments both before and after he filed his EEOC administrative complaint.

66. By ignoring his impairments and need for accommodation in the form of seated work, even when such work was available, and even after he filed an EEOC charge, and then by assigning him to the most undesirable shift, the overnight shift, of their proposed alternative position at Systems Control after University Counsel intervened in May 2025—when they could have assigned him to another, less undesirable shift—the University retaliated against him within the meaning of the ADA.

67. As a direct result of the retaliation alleged in the preceding paragraphs, Mr. Beasley has suffered substantial emotional distress, hurt, disappointment, anger and loss of trust in his workplace colleagues and superiors, and consequent erosion of his quality of life independent of, and in addition to, the

losses and damages he suffered on account of the discrimination and failure to accommodate also alleged in this Complaint.

### Prayer for relief

WHEREFORE, plaintiff Gregory Beasley prays for the following relief:

68. A declaration that the defendants, and each of them, violated Mr. Beasley's protected rights under the ADA by discriminating against him on account of his qualifying impairments, failing to accommodate those impairments, and retaliating against him for opposing those wrongs and participating in EEOC proceedings to redress them.

69. A permanent injunction prohibiting the defendants, and each of them, from committing any of those wrongs against Mr. Beasley in future, and requiring them to accommodate his covered disabilities in a non-retaliatory fashion, with periodic reports to the Court on their continuing actions to redress the wrongs identified herein.

70. An award of monetary damages sufficient to compensate Mr. Beasley for all the harms done to him on account of the wrongs alleged in this Complaint.

71. An award of Mr. Beasley's reasonable attorney fees and costs of suit.

72. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Stephen B. Pershing

        D.C. Bar No. 482580
KALIJARVI, CHUZI, NEWMAN & FITCH, P.C.
818 Connecticut Ave., N.W., Suite 1000
Washington, D.C. 20006
(202) 331-9260
spershing@kcnlaw.com

*Counsel for Plaintiff Gregory Beasley*

Dated: June 11, 2025